UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
JOSEPHINE QUILES,

                              Plaintiff,

                 -against-                                    **MEMORANDUM AND ORDER**

ANDREW M. SAUL, COMMISSIONER OF                              19-CV-11181 (KNF)
SOCIAL SECURITY,

                              Defendant.
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

Josephine Quiles ("Quiles") commenced this action against the Commissioner of Social

Security (the "Commissioner"), seeking review of an administrative law judge's ("ALJ")

December 3, 2018 decision finding Quiles ineligible for disability insurance benefits, pursuant to

Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-43, and Supplemental Security

Income ("SSI") benefits, pursuant to Title XVI of the SSA, 42 U.S.C. §§ 1381-1385.  Before the

Court is Quiles's motion to remand to the Commissioner for further administrative proceedings,

Docket Entry No. 15, and the Commissioner's cross-motion for judgment on the pleadings,

Docket Entry No. 17.

## ALJ'S DECISION

The ALJ found that Quiles: (1) meets the SSA's insured status requirements through

March 31, 2021; (2) has not engaged in substantial gainful activity since August 15, 2015, the

alleged disability onset date; (3) "has the following severe impairments: obesity, history of

lumbar spine fusion surgery in 2014, degenerative disc disease of the cervical spine, cervical

radiculopathy, status post anterior cervical discectomy and fusion (ACDF) with disc replacement

1

in February 2016, status post ankle fracture in June 2016, migraines, and sleep apnea"; and (4) does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1.

The ALJ found that Quiles had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR §§ 404.1567(b), 416.967(b), "except occasional kneeling, stooping[,] and stair climbing."  The ALJ stated that, in order to determine Quiles's RFC, she would follow a two-step process to evaluate Quiles's symptoms and reconcile these symptoms with the objective medical evidence in the record.  At step one, the ALJ would assess whether there were underlying physical or mental impairments evidenced by "medically acceptable clinical or laboratory diagnostic techniques" that "could reasonably be expected to produce [Quiles's] pain or other symptoms."  At step two, the ALJ would evaluate the "intensity, persistence, and limiting effects" of Quiles's symptoms to determine the extent to which they limit Quiles's functional abilities, considering the objective medical evidence and other evidence in the record.

In making her RFC determination, the ALJ noted that the medical evidence reflected that Quiles was injured when a pole hit her car on August 25, 2015, the alleged disability onset date, and that Quiles reported to medical providers and testified at the hearing that she had a history of back and neck impairments prior to this accident.  The ALJ noted that following the car accident, Quiles's orthopedist, Dr. William Barrick ("Dr. Barrick"), treated her for neck pain, diagnosed her with cervical disc disease, and performed a discectomy on February 11, 2016.  The ALJ noted that in addition to back and neck impairments, Quiles fractured her left ankle in June 2016. The ALJ also noted medical evidence showing that Quiles suffers from migraines, obesity, and hypertension.

According to the ALJ, at the hearing, Quiles testified that she had "neck, arm, ankle, and back impairments," as well as sleep apnea, memory loss, a clogged heart vessel, headaches, and depression.  Quiles testified that she had recently pulled her Achilles' tendon, after which her doctors advised her not to walk, and that her limitations with walking had begun when she had fractured her ankle.  She also testified that she was unable to bend or to lift heavy items.

Regarding Quiles's reports of pain, the ALJ noted that during a consultative examination by Dr. George Wootan ("Dr. Wootan") on August 8, 2016, Quiles reported that she experienced back pain radiating down her left leg "with numbness and a tingling sensation" and over to her right shoulder.  She also complained of pain and swelling from her ankle injury.  During a consultative examination performed in August 2018 by Dr. Allen Meisel ("Dr. Meisel"), Quiles reported that her back pain radiated to both hips, she experienced numbness in her feet, she could climb only four or five stairs at a time before stopping to rest, and she became easily short of breath.

The ALJ found that Quiles's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Quiles's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" and that Quiles's "symptoms and related limitations are not consistent with the evidence of record."  The ALJ found that the record lacks evidence of "reduced joint motion, muscle spasm, sensory deficit, and motor disruption" resulting from Quiles's pain, and that "[t]he results of those tests do not support [Quiles's] statements about pain and functional limitations."  To support this finding, the ALJ referenced the consultative examinations, noting that in August 2016, Dr. Wootan found that Quiles had good range of motion in her spine, full range of motion in her shoulders and hips, and limited

3

range of motion in her ankle.  In August 2018, Dr. Meisel found Quiles's gait to be normal and

that Quiles had full range of motion in her spine, arms, and legs.  The ALJ also referenced

Quiles's reports to Dr. Wootan in August 2016 and testimony at the hearing that she is able to

cook and clean, shower and dress herself, walk short distances, babysit her older grandchildren,

and swim.  Additionally, the ALJ noted that Quiles testified that she managed and cooked for a

café for four months after the alleged disability onset date.

The ALJ stated that she had considered the medical opinion evidence in the record and

assigned weight to it as follows.  She gave "slight weight" to "the opinion of treating physician,

Dr. Barrick, from February 2016 that [Quiles] has a marked 75% partial disability and is limited

to light work."  The ALJ explained that "[t]his opinion is for a different government agency and

not a specific assessment of the claimant's functional ability as limited to 'light duty' is not

defined.  Nonetheless, the opinion is not inconsistent with the [RFC] found herein."  The ALJ

gave "good weight" to Dr. Wootan's opinion that Quiles "had mild restrictions on kneeling and

bending" and "moderate restrictions on walking[,] and no restrictions on sitting," but did not give

good weight to Dr. Wootan's opinion that Quiles had marked restrictions on carrying and lifting

because "the medical evidence does not support ongoing deficits from [Quiles's] ankle

impairment."  The ALJ gave "some weight" to Dr. Meisel's opinion that Quiles had "marked

limitations of heavy lifting[,] carrying[,] climbing ladders/scaffolds[,] and being exposed to

unprotected heights" and mild limitations on "standing, walking, climbing stairs, bending, and

kneeling."  The ALJ explained that Dr. Meisel's findings of normal strength and normal range of

motion did not support greater limitations than "light exertion," and that Dr. Meisel did not

explain why he limited Quiles in connection with unprotected heights.

After noting that she had considered the interaction between Quiles's obesity and sleep apnea in arriving at Quiles's RFC, the ALJ determined that Quiles "retains the [RFC] to perform light exertion with occasional kneeling, stooping, and stairs" and has the capacity to perform work activities with these limitations.

The ALJ found further that Quiles: is unable to perform any past relevant work; was a younger individual age 18-49 on the alleged disability onset date and subsequently changed age category to closely approaching advanced age; and has at least a high school education and is able to communicate in English. The ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Quiles is not disabled regardless of whether she has transferable job skills.

Considering Quiles's age, education, work experience, and residual functional capacity, the ALJ determined that jobs exist in significant numbers in the national economy that she can perform, such as folding machine operator, office helper, and collator. The ALJ concluded that Quiles has not been under a disability from August 15, 2015, through the date of the decision.

### QUILES'S CONTENTIONS

Quiles asserts that: (1) the ALJ failed to analyze correctly the medical and other evidence in the record; and (2) the ALJ's RFC determination was not supported by substantial evidence. According to Quiles, "the ALJ cherry-picked the evidence she chose to highlight in order to support her ultimate decision of no disability" and "such cherry-picking of opinions is improper."

Quiles contends that she has a history of back and neck impairments, well documented by the medical evidence in the record, particularly the records of her treating orthopedic surgeon, Dr. Barrick. Quiles challenges the ALJ's finding that her statements regarding the intensity,

persistence, and limiting effects of the pain she experiences "are not entirely consistent with the medical evidence and other evidence of the record."  According to Quiles, the ALJ supported this finding by making citation to a cervical spine imaging from one month following Quiles's discectomy, which revealed no central canal or foraminal stenosis.  Quiles contends that "[t]he ALJ did not explain how this finding led her to the conclusion that [Quiles] may have been exaggerating the limiting effects of her symptoms."

Quiles maintains that in evaluating Quiles's symptoms and the limitations they place upon her activity, the ALJ neglected to analyze Quiles's "pain limitations found by examining and treating sources; testimony and medical findings as to precipitating and aggravating factors; measures used to relieve pain; and other factors," as, according to Quiles, is required by 20 C.F.R. § 404.1520c.  Quiles contends that the ALJ did not discuss any of the measures Quiles uses to relieve her pain, including medications such as Gabapentin and Ibuprofen, physical therapy, asking family members for assistance with household tasks, avoiding sitting and shifting around while sitting, and massage.

According to Quiles, the ALJ also engaged in impermissible cherry-picking of the evidence in the record by misconstruing her hearing testimony regarding daily activities and her reports of her daily activities to Dr. Wootan, highlighting some findings of consultative examiners Dr. Wootan and Dr. Meisel while neglecting to mention other of their findings, and failing to mention that Quiles testified that she was only able to run her own café for four months because she had help from family members and the café was not very busy.   Quiles maintains further that Dr. Meisel and Dr. Wootan did not make specific findings about what Quiles can still do despite her impairments, as required by Social Security Administration POMS [Program Operations Manual System] DI 22510.015.  Quiles contends that the ALJ's duty to develop the

medical and other evidence of the record obligated the ALJ to recontact Dr. Meisel for a "more definitive statement as to her limitations." Quiles contends further that Dr. Wootan did not set out a complete RFC, and the ALJ should have recontacted him for clarification as well.

Quiles contends that the ALJ erred in not taking Quiles's obesity into account properly, when assessing her RFC. Quiles asserts that medical records documented that her body mass index was above 40 throughout the relevant period, making her "morbidly obese." According to Quiles, Social Security Rule ("SSR") 02-01p provides that "the combined effects of obesity with other impairments may be greater than might be expected without obesity," and the ALJ did not consider properly the "interaction between [Quiles's] obesity and her musculoskeletal impairments," although the ALJ did state that she had considered the interaction between Quiles's obesity and her sleep apnea.

Quiles maintains that "the ALJ's residual functional capacity finding was not supported by substantial evidence." While the ALJ's residual functional capacity gave Quiles very few limitations on the full range of light work as set out in 20 C.F.R. §§ 404.1567(b), 416.967(b), according to Quiles, "there is no medical evidence of record that shows that [Quiles] has ever been capable of light work as defined in the Regulations since her alleged onset date." Quiles maintains that she testified at the hearing that during the relevant period she had neck surgery, which still causes her arm and back numbness; three surgeries on her lower back with another surgery pending; a pulled Achilles tendon; and a fractured ankle, among other impairments. She testified that she was taking Gabapentin for back pain and undergoing physical therapy for her lower extremities and back. She testified that she experiences pain after ten to fifteen minutes of sitting, so she cannot sit to attend church or community activities. She also experiences pain

from Dercum's disease.  The pain she experiences causes her depression, which she treats with medication and psychotherapy.

Quiles contends that the medical and other evidence corroborates her testimony, and that in weighing the medical evidence the ALJ violated the treating physician rule, which was in effect when Quiles filed her application for disability insurance benefits on June 10, 2016. Quiles maintains that the ALJ should have given the opinions of Dr. Barrick, Quiles's treating orthopedic surgeon, "great if not controlling weight."  On December 14, 2015, Dr. Barrick estimated Quiles's degree of disability as "75% marked" and limited her to "sedentary light" activities only.  On February 2, 2016, Dr. Barrick limited Quiles to "secondary [sic] light work only."  On February 23, 2016, after Quiles's discectomy, Dr. Barrick recommended that she "limit all activities[:] no bending[,] twisting[,] lifting, no driving," and opined that "she would not be capable of even sedentary or even light employment."  On August 24, 2016, Dr. Barrick noted that Quiles indicated that her pain was worsening and complained of new onset pain, making citation to diagnostic tests supporting her complaints of pain.

Quiles maintains that, in addition to her error in not giving controlling weight to Dr. Barrick's opinions, the ALJ erred by giving "good weight" to Dr. Wootan's opinion and "some weight" to Dr. Meisel's opinion.  Neither of these doctors is a specialist and each examined Quiles one time.  According to Quiles, their opinions should have been evaluated according to the standards in SSR 96-6p (rescinded Mar. 27, 2017), which requires that an ALJ apply a more rigorous test when determining how much weight to give to the opinion of a medical provider who does not have a treatment relationship with the individual than that which is applied to a treating physician's opinion.  Quiles contends that SSR 96-6p provides that the opinions of such non-treating physicians "can be given weight only insofar as they are supported by evidence in

the record, considering such factors as the consistency of the opinion with the record as a whole, including other medical opinions. The ALJ is required to consider the specialization, or lack thereof, of the physician rendering the opinion."

Quiles contends that Dr. Barrick's opinion, which should be given "great or controlling weight," limited her to less than sedentary work for most of the relevant time period. According to Quiles, she was capable of sedentary work only, and thus, as of her fiftieth birthday on December 11, 2016, she became disabled under the medical-vocational guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 at § 201.14.

Quiles requests that the Commissioner's decision be reversed and the case remanded for further administrative proceedings.

## COMMISSIONER'S CONTENTIONS

The Commissioner contends that the ALJ's determination that Quiles was not disabled was supported by substantial evidence. Specifically, the Commissioner contends that (1) the ALJ considered the objective medical evidence properly; (2) the ALJ considered the opinion evidence properly; and (3) the ALJ reconciled the evidence properly and found Quiles's allegations that she is disabled inconsistent with the record.

The Commissioner contends that Quiles has not demonstrated through the objective medical evidence disabling functional limitations on a sustained basis. While Quiles makes citation to treatment reports from late 2015 and early 2016 to show that she is disabled, these treatment reports document various diagnoses, rather than documented functional limitations. Moreover, according to the Commissioner, Quiles focuses her argument on the limited period from the time of the car accident in August 2015 until her discectomy in 2016. The Commissioner contends that, even if Quiles had an impairment(s) during this period, it would not

constitute a disability, because an impairment constitutes a disability if it lasts or is expected to last for a continuous period of not less than twelve months.  The Commissioner contends that the record does not establish that Quiles had an impairment for at least twelve months.  The Commissioner contends that the record reflects that Quiles recovered from her spine injury within twelve months; imaging of her spine in March 2016 showed no recurrent stenosis or herniated discs at other levels, and on April 25, 2016, she reported "overall . . . improvement in her symptoms since undergoing surgery," the range of motion in her cervical spine was "75% in all planes," her gait was normal, and she had full muscle strength in her arms.  With regard to Quiles's left ankle injury in June 2016, the Commissioner contends that by August 2016, she was able to bear weight on her left ankle, although she still walked with a limp, and Dr. Wootan concluded that she had only a mild restriction on standing and a moderate restriction on walking. The Commissioner maintains that after August 2016, there are no medical records documenting significant limitations in Quiles's left ankle, and "[i]ndeed, there was no evidence of any treatment at all for a period of close to two years," apart from a single report of left ankle pain on May 30, 2018.

The Commissioner contends that the ALJ considered properly Quiles's obesity, by (1) finding obesity to be a severe impairment; and (2) discussing the opinions of the two consultative examiners, both of whom were aware of Quiles's obesity.  Furthermore, the Commissioner points out that Quiles does not identify any additional limitations that should have been included in the RFC due to her obesity.  The Commissioner notes that the ALJ did include in her RFC limitations respecting some of the abilities identified in SSR 02-01p as possibly affected by obesity, such as limitations on lifting, kneeling, and stooping.

The Commissioner maintains that the ALJ considered properly the medical opinion evidence of Drs. Wootan and Meisel.  The Commissioner contends that the ALJ was not required to follow SSR 96-6p in determining what weight to give to Drs. Wootan and Meisel's opinions, because SSR 96-6p was rescinded on March 27, 2017, and thus is inapplicable to this case.  The Commissioner asserts that the ALJ gave Dr. Wootan's August 2016 opinion "good weight," properly, aside from his assessment of marked limitations for lifting and carrying.  Dr. Wootan based these limitations on the "status of healing of the left ankle."  The ALJ noted, "the record is devoid of any evidence that [Quiles] experienced notable limitations in her ankle following Dr. Wootan's opinion."  The Commissioner contends that the ALJ gave properly "some weight" to Dr. Meisel's August 2018 opinion.  The ALJ noted that evidence supported Dr. Meisel's opinion that Quiles had a marked limitation for heavy lifting, but no record support exists for Dr. Meisel's opinion that Quiles could not be exposed to heights.

The Commissioner contends that Quiles's assertion that the ALJ was obligated to recontact Drs. Meisel and Wootan is meritless for two reasons.  First, according to the Commissioner, the Second Circuit has held that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999).  Second, the Commissioner maintains that the regulations currently in place provide that an ALJ need only recontact a medical source when the ALJ cannot determine from the evidence in the case record whether the claimant is disabled.  20 C.F.R  §§ 404.1520b(c), 416.920b(c).

The Commissioner contends that the ALJ acted properly when she "discounted Dr. Barrick's opinions that [Quiles] has a '75% marked partial disability' and was limited to

'sedentary light activities,'" because "the ultimate determination on disability is reserved to the Commissioner" per 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Therefore, according to the Commissioner, the ALJ was not required to give Dr. Barrick's opinion that Quiles is disabled any particular weight.

The Commissioner contends that "the ALJ properly reconciled the evidence and found [Quiles's] allegations of disability to be inconsistent with the record as a whole."   The Commissioner maintains that "subjective symptomatology cannot, by itself, be the basis for a finding of disability;" rather, objective medical evidence must demonstrate an underlying condition, and that condition must reasonably be expected to produce the alleged symptoms. The Commissioner maintains that if Quiles's symptoms suggested greater restrictions on her ability than did the medical evidence, the ALJ was required to consider other evidence, such as Quiles's statements, daily activities, and the types and effectiveness of medication and other treatment for pain.  According to the Commissioner, the ALJ found properly that Quiles's "allegations regarding the nature, intensity, persistence, and limiting effects of her symptoms were not consistent with the evidence of record."  The ALJ heard Quiles's testimony and evaluated her credibility, and Quiles testified that she had operated a café for four months in 2016, and, while her children assisted her, she did the cooking.  She also testified that she was able to drive, and reported to Dr. Meisel that she was able to cook, clean, do laundry, shop, and shower and dress herself.  The ALJ considered these activities of daily living properly in evaluating Quiles's allegations.

The Commissioner maintains that under the substantial evidence standard of review, Quiles must do more than disagree with the ALJ's weighing of the evidence or point to evidence in the record to support her condition; instead, she must show that "no reasonable factfinder

could have reached the ALJ's conclusions on this record."  Regarding Quiles's contentions that the ALJ "cherry-picked" the evidence in the record, the Commissioner maintains that it is the ALJ's job to resolve conflicting evidence, and the ALJ may do so by limiting the weight she accords to an opinion if it is inconsistent with other evidence in the record or by relying on certain portions of opinions while rejecting others.  The Commissioner contends that the ALJ weighed the conflicting evidence properly and assessed the record evidence as a whole.

The Commissioner maintains that Quiles has failed to carry her burden both to: 1) establish a more restrictive RFC than that found by the ALJ; and 2) prove ultimately that she was disabled throughout the period for which she seeks benefits.

**QUILES'S REPLY**

In reply, Quiles contends that (1) SSR 96-6p was still applicable when she filed her application, and was rescinded only for cases filed after March 27, 2017; (2) the medical and other evidence of record documents disabling functional impairments throughout the relevant time period; and (3) the case should be remanded for further development of the medical evidence.

Quiles maintains that SSR 96-6p was still in effect when she filed her application for disability insurance benefits under Title II on June 10, 2016.[1]  According to Quiles, SSR 96-6p was rescinded only for cases filed after March 27, 2017, and "SSR 96-6p is applicable to this case in all respects unless the Title II application is denied and the Title XVI application is granted."  Quiles argues that SSR 96-6p required the ALJ to give greater weight to Dr. Barrick's opinions because he was a specialist in Quiles's conditions who had an ongoing treatment relationship with Quiles, and "good reason to denigrate the opinion of [Quiles's] treating

---

[1] Quiles filed her application for Title XVI SSI benefits on May 2, 2018.

orthopedic surgeon does not exist."  Quiles also contends that the ALJ did not explain adequately why she afforded "good weight" to Dr. Wootan's opinion and "some weight" to Dr. Meisel's opinion.

Quiles contends that she has set forth "specific functional impairments affecting her ability to engage in substantial gainful activity," pointing both to her hearing testimony and to the medical and other evidence in the record.  Quiles contends that "the record is replete with documentation of functional impairments that go far beyond mere medical diagnoses."

Quiles maintains that the ALJ failed to fulfill her obligation to develop the medical evidence of record.  Specifically, Quiles asserts that the ALJ should have recontacted Dr. Barrick to clarify what he meant by "secondary light work" or "sedentary light activities."  Quiles also contends that the ALJ was under a duty to question the claimant more extensively regarding her ability to perform daily activities of cooking and driving, and the frequency and duration of her performance of these tasks.  Quiles contends that the ALJ should have questioned her further about her obesity; rather, according to Quiles, the ALJ "paid mere lip service to consideration of [Quiles's] obesity and how it might impact her numerous orthopedic limitations and serve to further exacerbate them" and "actually [blamed Quiles] for not reporting specific problems with obesity."

Quiles requests that the case be remanded for further administrative proceedings.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing

the decision of the Commissioner of Social Security, with or without remanding the cause for a

rehearing."  42 U.S.C. §405(g).

> A district court may set aside the Commissioner's determination that a claimant is
> not disabled only if the factual findings are not supported by "substantial evidence"
> or if the decision is based on legal error.  Substantial evidence "means such relevant
> evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain

circumstances, failure to adhere to the applicable regulations."  Kohler v. Astrue, 546 F.3d 260,

265 (2d Cir. 2008) (internal citations omitted).

To qualify for disability benefits, an individual must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see 42

U.S.C. § 1382c(a)(3)(A).  The Social Security Administration's regulations establish a five-step

process for determining a disability claim.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social
> Security Administration] will not review the claim further.  At the first step, the
> agency will find nondisability unless the claimant shows that he is not working at
> a "substantial gainful activity."  At step two, the [Social Security Administration]
> will find nondisability unless the claimant shows that he has a "severe impairment,"
> defined as "any impairment or combination of impairments which significantly
> limits [the claimant's] physical or mental ability to do basic work activities."  At
> step three, the agency determines whether the impairment which enabled the
> claimant to survive step two is on the list of impairments presumed severe enough
> to render one disabled; if so, the claimant qualifies.  If the claimant's impairment
> is not on the list, the inquiry proceeds to step four, at which the [Social Security
> Administration] assesses whether the claimant can do his previous work; unless he
> shows that he cannot, he is determined not to be disabled.  If the claimant survives
> the fourth stage, the fifth, and final, step requires the [Social Security
> Administration] to consider so-called "vocational factors" (the claimant's age,
> education, and past work experience), and to determine whether the claimant is

capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (internal citations omitted).

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). However, when there is sufficient evidence in the record for the ALJ to determine whether the claimant is disabled, the ALJ will make a decision based on that evidence. See 20 C.F.R. §§ 404.1520b(b), 416.920b(b). If there is insufficient evidence in the record to determine whether the claimant is disabled, the ALJ may take additional actions to develop the record, including recontacting a medical source or requesting additional existing evidence. See 20 C.F.R. §§ 404.1520b(b), 416.920b(b).

For claims filed before March 27, 2017, the treating physician rule applies: if "a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is given "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion": examining relationship, treatment relationship, length of the treatment relationship and the frequency of examination; nature and extent of the treatment relationship, and evidentiary support for the opinion considered. 20 C.F.R. §§ 404.1527(c), 416.927(c).

When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice

of determination or decision for the weight we give your treating source's medical opinion.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) are the "[l]ength of the treatment relationship and the frequency of examination" and "[n]ature and extent of the treatment relationship."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The factors listed in paragraphs (c)(3) through (c)(6) are evidentiary supportability, consistency of the opinion with the record as a whole, and medical specialization of the treating source.  See 20 C.F.R. §§ 404.1527(c)(3)-(c)(6), 416.927(c)(3)-(c)(6); see also Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008).

In the Second Circuit, these factors are known as the Burgess factors, and an ALJ's failure to apply them explicitly when declining to give controlling weight to a treating physician's opinion is a procedural error.  See Estrella v. Berryhill, 925 F.3d 90, 95–96 (2d Cir. 2019).  In the absence of other good reasons for the weight assigned to the treating physician's opinion, failure to apply the Burgess factors is grounds for remand.  Id. at 96.  Although a treating physician's conclusion that a claimant is disabled is not entitled to controlling weight, as this determination is reserved to the Commissioner, see 20 C.F.R. §§ 404.1527(d)(1),(d)(2), 416.927(d)(1),(d)(2), when an ALJ discounts a treating physician's opinion that a claimant is disabled, the ALJ is obligated to give good reasons for doing so.  See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (explaining that the regulations requiring an ALJ to give good reasons for not crediting a treating physician's opinions exist to help claimants understand the disposition of their cases).  Additionally, the Commissioner "generally give[s] more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."  20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

The treating physician rule does not apply to claims filed on or after March 27, 2017.  For these claims, no particular deference or special weight is given to the opinion of a treating physician.  See 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, "[w]e will articulate in our determination or decision how persuasive we find all of the medical opinions."  20 C.F.R. §§404.1520c(b), 416.920c(b).  "When a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."  20 C.F.R. §§404.1520c(b)(1), 416.920c(b)(1).  The factors listed in paragraphs (c)(1) through (c)(5) are: supportability, consistency, relationship with the claimant (including the length of the treatment relationship, the frequency of examination, the purpose of the treatment relationship, and the extent of the treatment relationship), specialization, and other factors such as the medical source's familiarity with the other evidence in a claim.  See 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  "We will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, "we may, but are not required to, explain how we considered" the other factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability concerns the degree to which "the objective medical evidence and supporting explanations presented by a medical source" support the medical opinion; consistency concerns the degree to which the medical opinion is consistent with the other evidence in the record. 20 C.F.R. §§ 404.1520c(c)(1),(2), 416.920c(c)(1),(2).

When a claimant alleges symptoms, such as pain, that limit the claimant's capacity for work, the ALJ is required to follow a two-step process to evaluate the claimant's credibility.  See 20 C.F.R. §§ 404.1529(c), 416.929(c).  The ALJ must first determine whether a claimant has a "medically determinable impairment(s) that could reasonably be expected to produce" the claimant's reports of symptoms such as pain.  20 C.F.R. §§ 404.1529(c), 416.929(c).  If a claimant's symptoms "suggest a greater severity of impairment than can be shown by objective medical evidence alone," then, to determine the extent to which pain affects the claimant's ability to perform basic work activities, the ALJ considers other evidence, including, inter alia, medical opinion evidence, the claimant's prior work record, the claimant's statements about his or her symptoms, the claimant's daily activities, medications and other treatments that the claimant uses to manage pain, and any other measures the claimant uses to reduce pain. 20 C.F.R. §§ 404.1529(c), 416.929(c).

 "Although the claimant bears the general burden of proving that he is disabled under the statute, 'if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform.'" Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

## APPLICATION OF LEGAL STANDARD

### Quiles's Application for Disability Insurance Benefits

#### *Dr. Barrick*

Quiles filed her application for disability insurance benefits under Title II on June 10, 2016.  Because this application was filed before March 27, 2017, the ALJ was required to follow the treating physician rule when determining whether Quiles is disabled.

The ALJ gave "slight weight" to "the opinion of treating physician, Dr. Barrick, from February 2016 that [Quiles] has a marked 75% partial disability and is limited to light work." The ALJ explained that "[t]his opinion is for a different government agency and not a specific assessment of the claimant's functional ability as limited to 'light duty' is not defined. Nonetheless the opinion is not inconsistent with the residual functional capacity found herein."

The treating physician rule provides that treating physicians' opinions are entitled to more weight because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations, such as consultative examinations." 20 C.F.R. §§ 404.1527(c)(2).  Dr. Barrick had exactly the kind of lengthy treatment relationship with Quiles that this regulation contemplates; as he explained in a letter dated August 21, 2016, he "had treated her for several years for lower back problems and spinal listhesis, [and] performed a lumbar fusion in the past."  Moreover, Dr. Barrick is a specialist in orthopedics, whose opinion is entitled to be given more weight under 20 C.F.R. §§ 404.1527(c)(5).

Under the treating physician rule, an ALJ must "either [] give [the treating physician's] opinions controlling weight or [] provide good reasons for discounting them."  Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010).  A treating physician's conclusion that a claimant is disabled is not entitled to controlling weight, as this determination is reserved to the Commissioner; still, when an ALJ discounts a treating physician's opinion that a claimant is disabled, the ALJ is obligated to give good reasons for doing so.  See Snell, 177 F.3d at 134.  Here, the ALJ did not give controlling weight to Dr. Barrick's opinion that Quiles "has a marked 75% partial disability."  One reason the ALJ gave for assigning only "slight weight" to Dr. Barrick's opinion

was that "his opinion was for a different governmental agency."  This is incorrect; while Dr.

Barrick examined Quiles in connection with a no-fault insurance claim, he did so as her longtime

treating physician and his opinions are documented within Quiles's treatment records.

Therefore, the ALJ's statement that Dr. Barrick's opinion was for a different governmental

agency is erroneous and cannot qualify as a good reason to discount Dr. Barrick's opinion.  The

ALJ also reasoned that Dr. Barrick's opinion was "not a specific assessment of the claimant's

functional ability as limited to 'light duty' is not defined."  The ALJ here appears to be referring

to Dr. Barrick's February 1, 2016 opinion limiting Quiles to "secondary light work only."

However, the ALJ made no reference to Dr. Barrick's February 23, 2016 statement following

Quiles's discectomy that Quiles should limit all activities, should not bend, twist, lift, or drive,

and was incapable of sedentary or light employment.  This opinion gives specific functional

limitations and, as it precludes Quiles from sedentary or light work, it is not consistent with the

ALJ's determination of Quiles's residual functional capacity.  The ALJ failed to consider

Quiles's treating physician's opinion about the nature and severity of her impairments.

Moreover, in assigning Dr. Barrick's opinion "slight weight" instead of "controlling

weight," the ALJ failed to consider and discuss the Burgess factors, including "(1) the

frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence

supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence;

and (4) whether the physician is a specialist."  Estrella, 925 F.3d at 95–96; see Burgess, 537 F.3d

at 129.  "An ALJ's failure to 'explicitly' apply the Burgess factors when assigning weight at step

two is a procedural error," and is grounds for remand if the ALJ has not otherwise provided good

reasons for her assignment of weight to the opinion of the treating physician.  Estrella, 925 F.3d

at 96.  As discussed above, the ALJ did not provide good reasons for her assignment of "slight

weight" to Dr. Barrick's opinion.  Thus, her failure to apply the Burgess factors is legal error and warrants remand.

### Dr. Wootan and Dr. Meisel

The ALJ gave "good weight" to Dr. Wootan's August 2016 opinion that Quiles "had mild restrictions on kneeling and bending, and because of the unknown status of the healing of the left ankle, she would have marked restrictions on carrying and lifting, and climbing stairs. He found moderate restrictions on walking and no restrictions on sitting."  However, the ALJ did not give good weight to the portion of Dr. Wootan's opinion regarding marked restrictions on lifting and carrying, explaining that "the medical evidence does not support ongoing deficits from the ankle impairment" and that Quiles was walking for her health until July 2018 and had a normal gait in August 2018.

The ALJ gave "some weight" to Dr. Meisel's August 2018 opinion that "the claimant has marked limitations of heavy lifting and carrying and climbing ladders/scaffolds, and being exposed to unprotected heights. He found mild restrictions for standing, walking, climbing stairs, bending, and kneeling."  The ALJ explained that she gave some weight to the opinion "limiting the patient to light work" and "precluding heavy lifting and carrying," but any greater limitations were not supported by Dr. Meisel's findings that Quiles had normal strength and normal range of motion.  Additionally, the ALJ noted that Dr. Meisel did not explain why he limited the claimant in connection with unprotected heights.

Quiles contends that neither physician set out a sufficient consultative examination, as required by Social Security Administration POMS [Program Operations Manual System] DI 22510.015, which, according to Quiles, requires "specific RFC findings as to what an individual can still do despite her impairments."  Quiles contends that the ALJ should have recontacted the

physicians for a more definitive statement about Quiles's limitations as part of her affirmative duty to develop the record.  While DI 22510.015 does list, as part of a completed consultative examination report, "a medical opinion (MO) from the source expressing an opinion about what the claimant can still do despite his or her impairment(s)," it provides further that "the absence of an MO does not make a [consultative examination] report incomplete;" rather, "the report must be complete enough to enable an independent reviewer to determine the nature, severity and duration of the impairments."  Quiles has not alleged that the reports of Drs. Wootan and Meisel do not meet this standard.  Additionally, under 20 CFR §§ 404.1520b(b), an ALJ need only recontact a medical source when the ALJ cannot determine, after considering the evidence in the record, whether the claimant is disabled.

Quiles contends further that the ALJ failed to follow SSR 96-6p in assigning weight to the opinions of Drs. Wootan and Meisel.  According to Quiles, "SSR 96-6p provides that the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources."  SSR 96-6p was rescinded on March 27, 2017, and thus was not in effect when the ALJ rendered her decision.  See SSR 17-2p, 2017 WL 3928306, at *1 (2017) (expressly rescinding and replacing SSR 96-6p as of March 27, 2017).  The Court is advised that, as a general matter, the regulations to be applied are those in effect when the ALJ adjudicates the disability claim.  Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (summary order).  Quiles provides no support for her contention that SSR 96-6p was "rescinded only for cases filed after 3/27/17."  Quiles's argument that the ALJ erred by failing to follow the guidance in SSR 96-6p is therefore meritless.[2]

---

[2] Quiles also contends that Dr. Barrick's opinion should have been given greater weight under SSR 96-6p.  SSR 96-6p, when it was in effect, provided guidance only for how an ALJ should consider the opinions of "State agency

*Obesity*

Quiles contends that the ALJ erred by failing to consider the interaction between Quiles's obesity and her "musculoskeletal impairments."  However, the ALJ acknowledged Quiles's obesity by explicitly listing it among Quiles's severe impairments.  The ALJ also considered the interaction between Quiles's obesity and sleep apnea.  The ALJ emphasized that Quiles "did not allege specific problems with obesity" throughout the application process or when testifying at the hearing.  Moreover, the ALJ considered the medical opinions of doctors who were aware of Quiles's obesity.  See Drake v. Astrue, 443 F. App'x 653, 657 (2d Cir. 2011) (summary order) (ALJ properly considered the plaintiff's obesity when the ALJ considered "medical reports that repeatedly noted [the plaintiff's] obesity and provided an overall assessment of [the plaintiff's] work-related limitations"); Guadalupe v. Barnhart, No. 04 CV 7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005) ("When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the [claimant], the claimant's obesity is understood to have been factored into their decisions.")  As the Commissioner notes, Quiles does not identify any additional limitations that the ALJ should have included in the RFC due to her obesity. Accordingly, the Court finds that the ALJ did not err in her consideration of Quiles's obesity.

*The ALJ's Credibility Assessment*

Quiles contends that the ALJ failed to evaluate properly her statements of subjective pain. While Quiles maintains that the ALJ failed to consider the factors set out in 20 C.F.R. § 404.1520c, this regulation does not concern an ALJ's evaluation of a claimant's reports of pain; the applicable regulation is 20 C.F.R. §§ 404.1529(c).

---

medical and psychological consultants and other program physicians and psychologists," not treating sources such as Dr. Barrick.  However, as explained above, the ALJ failed to follow the treating physician rule with regard to Dr. Barrick, and the Court finds remand is warranted respecting Quiles's application for disability insurance benefits on that basis.

The ALJ found that, while Quiles's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Quiles's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record."  Additionally, the ALJ found that "the claimant's symptoms and related limitations are not consistent with the evidence of record. For example, the record shows a lack of reduced joint motion, muscle spasm, sensory deficit, and motor disruption that may result from or be associated with the symptom of pain and testimony regarding functional limitations. The results of these tests do not support the claimant's statements about pain and functional limitations."  As Quiles notes, it is not clear which "tests" the ALJ relied on in making this finding, though presumably they are the tests performed by Drs. Wootan and Meisel, whose findings the ALJ goes on to discuss.  In evaluating Quiles's credibility, the ALJ discussed properly some of the factors set out in 20 C.F.R. §§ 404.1529(c), including the findings of Drs. Wootan and Meisel and Quiles's testimony regarding her daily activities, and noted that "[p]ain and effects of prescription medication do not prevent Quiles's cognitive functioning."  However, notably absent from the ALJ's credibility evaluation is any mention of Dr. Barrick's opinions or medical records.  Accordingly, the ALJ should revise her credibility evaluation on remand, following proper application of the treating physician rule. See, e.g., Mortise v. Astrue, 713 F. Supp. 2d 111, 124–25 (N.D.N.Y. May 13, 2010) ("The ALJ's proper evaluation of [the treating physician's] opinions will necessarily impact the ALJ's credibility analysis. Thus, the credibility evaluation is necessarily flawed.")

## Quiles's Application for SSI Benefits

Quiles applied for SSI benefits under Title XVI on May 2, 2018.  Because this application was filed on or after March 27, 2017, with respect to this application, the ALJ was

not required to follow the treating physician rule when assessing whether Quiles is disabled.

Instead, the ALJ was required to evaluate the medical opinions in the record in accordance with

20 C.F.R. § 416.920c.  The ALJ may have been unaware that this regulation applied to Quiles's

application for SSI benefits; she did not make citation to this regulation at any point in her

opinion, instead stating that she had "considered opinion evidence in accordance with the

requirements of 20 CFR 404.1527 and 416.927," the regulations that apply to applications filed

prior to March 27, 2017.

Under 20 C.F.R. § 416.920c, the ALJ was not required to give any particular weight to

the opinion of treating physician Dr. Barrick, and was not required to address each of Dr.

Barrick's medical opinions that existed in the record.  However, the ALJ was required to explain

"how persuasive" she found the medical opinions in the record, and was required to explain how

she had considered the supportability and consistency factors in reaching her determination

respecting the persuasiveness of each medical opinion.

The ALJ appears to have found Dr. Barrick's opinion that Quiles "has a marked 75%

partial disability and is limited to light work" unpersuasive, as she assigned it only "slight

weight."  The ALJ did not articulate how she assessed the supportability or consistency of Dr.

Barrick's opinion, as required by 20 C.F.R. § 416.920c(b)(2).  With respect to Dr. Wootan's

opinion, the ALJ assigned it "good weight" and addressed its consistency with the other medical

evidence in the record when she noted that "the medical evidence does not support ongoing

deficits from the ankle impairment"; however, the ALJ did not address its supportability.  With

respect to Dr. Meisel's opinion, the ALJ assigned it "some weight" and addressed its

supportability when she noted that "greater limitations than light exertion" are not supported "by

the findings on the consultative examination of normal strength and normal range of motion";

however, the ALJ did not address its "consistency."  The ALJ thus committed legal error by not following fully the requirements of 20 C.F.R. § 416.920c(b) when articulating how persuasive she found the medical opinions in the record.

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  Kohler, 546 F.3d at 265 (internal citations omitted).  The Second Circuit has not yet decided whether failure to adhere to 20 C.F.R. § 416.920c constitutes reversible error; however, district courts in this circuit have concluded that it does.  See, e.g., Soto v. Comm'r of Soc. Sec., No. 19-CV-4631, 2020 WL 5820566, at *8-11 (E.D.N.Y. Sept. 30, 2020) (finding remand warranted when ALJ failed to evaluate properly the consistency and supportability of the medical opinions in the record); Pamela P. v. Saul, No. 3:19-CV-575, 2020 WL 2561106, at *5 (N.D.N.Y. May 20, 2020) (finding remand warranted when ALJ's assessment of opinion evidence was "conclusory" and failed to explain exactly how a medical opinion was inconsistent with the medical evidence). The Court therefore finds that the ALJ's failure to adhere to the applicable regulation, 20 C.F.R. § 416.920c, is legal error warranting remand.[3]

## CONCLUSION

For the foregoing reasons, the Court finds that (1) the ALJ erred in failing to follow the treating physician rule when evaluating Quiles's application under Title II, and therefore, the ALJ's residual functional capacity determination was based on legal error; and (2) the ALJ erred in failing to follow the requirements of 20 C.F.R. § 416.920c when evaluating Quiles's

---

[3] Identical regulations govern the ALJ's assessment of Quiles's obesity and evaluation of Quiles's credibility in connection with Quiles's application for SSI benefits as those that govern in connection with Quiles's application for disability insurance benefits.  Therefore, the Court will not repeat the analysis here.  On remand, the ALJ should revisit her assessment of Quiles's credibility following the proper application of 20 C.F.R. § 416.920c.

application under Title XVI, and therefore, the ALJ's residual functional capacity determination

was based on legal error.  Quiles's motion for an order remanding the matter to the

Commissioner for further administrative proceedings, Docket Entry No. 15, is granted, and the

Commissioner's motion for judgment on the pleadings, Docket Entry No. 17, is denied.

Dated: New York, New York
      March 5, 2021                        SO ORDERED:

                                               Kevin Nathaniel Fox
                                               KEVIN NATHANIEL FOX
                                               UNITED STATES MAGISTRATE JUDGE